## 18935

The STATE, Respondent, v. Clarence WHITE, Jr., Appellant.

(171 S. E. (2d) 712)

*W. L. Clifton, Esq.,* of Sumter, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *C. Pinckney Roberts, Assistant Attorney General,* of Columbia,

*and R. Kirk McLeod, Solicitor,* of Sumter, *for Respondent,*

July 1, 1969.

Moss, Chief Justice.

The appellant, Clarence White, Jr., was tried in the Court of General Sessions for Sumter County, under an indictment charging him with the murder of Thomas Wright, on January 7, 1967. The appellant was found guilty of involuntary manslaughter and was sentenced to imprisonment for eighteen months.

The appellant was initially charged with murder but at the close of all of the testimony, the trial judge submitted to the jury only the question of whether the appellant was guilty or not guilty of involuntary manslaughter. We quote the following from the charge:

"* * * the defendant in this case is indicted for murder. And printed on the front of the indictment, and contained in the indictment, you will also find the use of the word murder. Although not expressly contained therein, or printed or written in the indictment, is the lesser offense known as involuntary manslaughter. And that is the charge upon which this defendant is on trial. It is contained within the indictment upon the principal that the greater includes the lesser. Now in reading the indictment you are not going to find the phrase involuntary manslaughter, but it is there, and it is the

charge before you, whether or not the defendant is guilty or not guilty of involuntary manslaughter."

The general rule is that an indictment for a higher offense will sustain a conviction for a lower offense included in the higher. *State v. Self,* 225 S. C. 267, 82 S. E. (2d) 63. Under an indictment for murder in the usual form, a conviction may be had for involuntary manslaughter. *State v. Causer,* 87 S. C. 516, 70 S. E. 161. It was also held in the last cited case that the negligent handling of a loaded gun causing death will support a verdict for involuntary manslaughter. The foregoing rules were restated and approved in *State v. Phillips,* 226 S. C. 297, 84 S. E. (2d) 855.

The appellant charges error on the part of the trial judge in allowing the indictment for murder to go to the jury after he had submitted only the charge of involuntary manslaughter to it. We have carefully considered the record in this case and the question posed was not raised during the trial of the case. The rule is well established that if asserted errors are not presented to the lower court, the question cannot be raised for the first time on appeal. *State v. Alexander,* 230 S. C. 195, 95 S. E. (2d) 160; *State v. Bolin,* 230 S. C. 204, 95 S. E. (2d) 163, and *State v. McCrary,* 242 S. C. 506, 131 S. E. (2d) 687.

The appellant next contends that under the case of *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694, that the State failed to accord adequate procedural safeguards to secure his privilege against self incrimination. Specifically, he charges that the trial judge was in error in permitting an investigating officer, a witness for the State, to testify as to statements allegedly made to the officer by him, asserting that such statements were involuntarily made and in violation of the Miranda rule. Upon this basis, the appellant maintains that his statements should have been excluded from the evidence. In the Miranda case it was held that when an individual is taken into custody and before

he is questioned or interrogated procedural safeguards must be employed to protect the privilege against self incrimination. The court said:

"* * * He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

The State, through an investigating officer, attempted to prove a statement made to him by the appellant and counsel for the appellant then made objection thereto. The trial judge then excused the jury and heard testimony from the investigating officer as to voluntariness of the statement made by the appellant. This officer testified that he gave the appellant the Miranda warnings and in his opinion the appellant understood such warnings and waived his right to remain silent or the privilege of having an attorney present prior to any questioning. Thereafter, this officer took a written statement from the appellant and such was labeled a "voluntary statement". Included in the statement in fine print was an acknowledgment that the Miranda warnings had been given. The appellant testified to the effect that he had not been warned of his constitutional rights nor had he read the written statement before signing it. It thus appears that the testimony of these two witnesses was contradictory, raising an issue of fact as to whether the Miranda warnings were given and the statement thereafter taken was voluntary. The trial judge sustained an objection

to the introduction of the written statement because at issue was the question of whether such was voluntary and the printed form of the statement labeled as being voluntary required its exclusion. However, he did hold that any oral statement made by the appellant to the officer was admissible in evidence. The trial judge heard the confession evidence and resolved the conflicts therein and admitted the oral statement in evidence, such being a determination of the voluntariness thereof. Thereafter, in the presence of the jury, this officer testified that he had advised the appellant of his rights under the Miranda decision, which the appellant apparently understood, and following this he made a voluntary statement. The appellant, before the jury, offered no evidence to the contrary.

The officer testified that the appellant told him that when he was near the corner of Charles and West Bartlett Streets, in the City of Sumter, and had started across the intersection he heard someone call to him and he stopped. He saw Thomas Wright coming in his direction and Wright said "You ain't got nothing", and the appellant didn't know exactly what he meant but he thought he meant money. The appellant also told him at a distance of two to three feet he pulled his 22 caliber pistol from his pocket and as Wright approached the pistol went off, inflicting upon him a fatal injury. He further testified that the appellant told him that he threw the pistol in a field behind a house.

It is our conclusion that the trial judge properly found that there was evidence showing adequate safeguards for the protection of the appellant's constitutional rights and, therefore, correctly admitted the statement made by the appellant.

The trial judge charged the jury that any alleged statement made by the appellant should not be accepted as voluntary unless certain procedural safeguards had been shown by the State before the alleged statement was made. He charged the jury that the State had to show that the

statement was freely and voluntarily made after the defendant was apprised of his constitutional rights as outlined in the Miranda decision.

After the jury had returned a verdict finding the appellant guilty of involuntary manslaughter, a motion was made for judgment *non obstante veredicto*. The basis of the motion was that the testimony did not show beyond a reasonable doubt that the appellant was guilty of involuntary manslaughter. The appellant charges the trial judge with error in refusing such motion.

We have held that where a motion is made for a directed verdict of not guilty, the testimony must be viewed in the light most favorable to the state. The case must be submitted to the jury if there is evidence reasonably tending to prove the defendant's guilt or from which his guilt may be fairly and logically deduced. *State v. Rayfield,* 232 S. C. 230, 101 S. E. (2d) 505. Viewed in the light most favorable to the State there is evidence that the pistol which killed the deceased was in the hands of the appellant immediately prior to its being discharged and that the pistol was being handled in a negligent or careless manner. The appellant testified that he had not pointed the pistol at the deceased and that the deceased hit the pistol or his hand holding the pistol, resulting in the pistol being fired. There was testimony by witnesses in behalf of the State indicating that the deceased did not strike the appellant's hand or the pistol. The testimony was sufficient to warrant an inference that the death of Thomas Wright was caused by the negligent handling of a loaded pistol within the definition of involuntary manslaughter. *State v. Quick,* 168 S. C. 76, 167 S. E. 19. There was no error, under the facts here, in submitting the issue of involuntary manslaughter to the jury. The trial judge properly denied the motion of the appellant for judgment *non obstante veredicto*.

The appellant contended that the death of Thomas Wright was the result of an accident or misadventure. The trial judge fairly and clearly submitted the ap-

pellant's contention that the shooting was accidental and that the burden was upon the State to prove beyond a reasonable doubt that the death of the deceased was not due to an accident but was caused and brought about by the negligence or carelessness on the part of the appellant in the handling of a dangerous instrumentality. The appellant alleges error on the part of the trial judge in making this charge. It appears from the record that at the conclusion of the charge the trial judge gave the appellant opportunity, pursuant to Section 10-1210 of the Code, to express any objections to the charge as made. Since the appellant at the time raised no objection to the aforesaid charge as given, such failure constitutes a waiver of any right to challenge the charge as being erroneous. *State v. Hyder,* 242 S. C. 372, 131 S. E. (2d) 96.

At the conclusion of the charge by the trial judge, the appellant was afforded the opportunity to request additional instructions to the jury. In response thereto, counsel for the appellant stated, "If the jury believed that the boy struck the pistol from his hand and it fired, that would certainly be, what you might say, * * * the man killing himself through inadvertence or mischance." To this statement the trial judge replied, "I took care of that by saying without any fault on the part of the defendant, in my definition of accident or mischance." We have reviewed the charge of the trial judge and find that he instructed the jury as follows:

"* * * More practically speaking the defendant says, although there was a discharge of the pistol, it was because of an accident, and the discharge was not through any fault on my part, or any negligence on my part, or any carelessness on my part. * * *"

It is our conclusion that the trial judge committed no error in refusing the appellant's additional request in view of his prior charge on the subject of mischance or accident. We have considered the entire charge as a whole and conclude such charge fully protected the rights of the appellant in respect to his interposed defense.

All of the exceptions of the appellant are overruled and the judgment of the lower court is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.