2109

The STATE, Respondent v. Ronald L. CREECH, Appellant.
(441 S.E. (2d) 635)

Court of Appeals

*Fred Henderson Moore,* Charleston, and *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. General Harold M. Coombs, Jr.* and *Norman Mark Rapoport,* Columbia, and *Sol. Barbara R. Morgan,* Aiken, *for respondent.*

## ORDER

### January 31, 1994.

*Per Curiam:*

After reviewing the Petition for Rehearing in this case, it is ordered that Opinion No. 2109 filed December 20, 1993, be withdrawn and the attached Opinion be substituted. The Petition for Rehearing is denied.

And it is so ordered.

/s/ <u>William T. Howell,</u> C.J.
/s/ <u>William M. Cureton,</u> J.

GOOLSBY, J., I adhere to my previous concurring and dissenting opinion.

Heard Nov. 2, 1993.

Filed Dec. 20, 1993. Ref. on Den. of Ref. Jan. 31, 1994.

CURETON, Judge:

Ronald L. Creech was convicted of aggravated assault and

battery upon two police officers. On appeal, Creech argues the trial judge erred: (1) in failing to grant a mistrial when testimony placed Creech's character in issue; (2) in failing to direct a verdict of acquittal; and (3) in failing to conduct a *Jackson v. Denno*[1] hearing to determine the admissibility of a statement allegedly made by Creech. We conclude that use of Creech's statement absent a *Jackson v. Denno* hearing violates due process, and therefore reverse the convictions and remand for a new trial.

At approximately 11:00 p.m. on December 27, 1991, State Trooper Thomas Blackburn was on patrol duty on Highway 78 near Williston and observed a car being driven in an erratic manner. He followed the car and, believing the driver to be under the influence of alcohol, pulled the car over.[2] Blackburn approached the car and asked the driver to step to the rear so that Blackburn could determine if he had been drinking. The doors of the car opened and the other four occupants began to get out. Blackburn told them to remain in the car and they did so. The passengers then rolled the car's windows down and began shouting obscenities. Blackburn told the person in the front passenger seat to exit the car and walk to the rear. The individual did so but then cursed and shoved Blackburn. Blackburn tried to place handcuffs on the individual and the remaining passengers exited the car and came towards him. Blackburn called for assistance on his radio.

Officer Frank Stone of the Williston police happened on the scene and stopped to assist Blackburn. Stone told the other passengers to get back but they shouted, waved their hands, and ran into the street yelling "Stop and help us with the police."[3]

Other State Troopers arrived and the officers were restoring order when two cars arrived and several persons, including Creech, stepped out. Creech walked across the street and inquired about his nephew, who was one of those arrested. Captain Thomas Gantt of the Sheriff's Department and officer John Bell of the Williston Police Department approached

---

[1] *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. (2d) 908 (1964).

[2] It was later determined that the driver was not driving under the influence of alcohol and he was not charged with DUI.

[3] Except for the driver who was charged with driving left of center, all the passengers in the car were charged with disobedience to a police officer.

Creech, told him everything was all right, and escorted him back across the street.

Creech ignored the police and again came back across the street with several other persons. They cursed Gantt, who told them to get in the car. One of the individuals attacked Gantt, and Bell attempted to assist him. Creech then struck Bell in the head and Bell wrestled Creech into a headlock.

Creech continued to struggle, and Bell then struck Creech in the head several times with his flashlight. During the struggle, Creech allegedly tried to grab Bell's gun. Bell suffered ruptured blood vessels and swelling in his eye due to the blow inflicted by Creech.

Officer Stone and Trooper Blackburn helped restrain Creech. Creech broke free, however, and struck Stone in the eye. Stone's eye became swollen and he suffered blurred vision from Creech's blow.

The officers subdued Creech and charged him with disorderly conduct. They transported him to the hospital for medical attention for a head injury he suffered when Bell struck him with the flashlight. While waiting for treatment at the hospital, Captain Gantt testified that he told Creech, "how things can explode" and "get out of hand" and that "some officers might think you were trying to grab the gun if you start wrestling with them." Creech, who was admittedly in custody and handcuffs, allegedly replied, "Well you know, I was trying to grab his gun." Gantt then stated he told Creech that he "ought not say that" and Creech said, "Well, I tell it like it is." Gantt conceded that neither he nor any other officer in his presence advised Creech of his *Miranda* rights that night.

Several days later, Creech was charged with aggravated assault and battery. The jury found him guilty and he appeals.

## I.

Creech first contends the trial court erred in failing to grant his motion for a mistrial after the prosecution allegedly placed his character in issue during the testimony of Officer Bell:

> Q. Okay, so he's in jail on the disorderly that the officer wrote.
> A. Right, yes, ma'am.
> Q. And then this is Friday night, Saturday morning,

when did you get with your Chief or whatever and obtain warrants?

A. I believe Roger either called you Sunday morning or either Monday morning. Now, Sunday morning I called the Probation Officer.

Q. Let's not talk about anything in that regard, Officer Bell.

Creech's counsel indicated to the judge that he wanted to make a motion outside the jury's presence and the jury was removed from the courtroom. Counsel moved for a mistrial on the ground that Officer Bell's reference to calling the Probation officer "conveys unerringly the impression that this man had a prior record and places him in the posture of guilt before the jury before the case is even deliberated." The trial judge asked counsel if he wanted a curative instruction for the jury to disregard the statement. Counsel responded "that is entirely up to the court but my motion is for a mistrial because this impression [that Creech had a prior criminal record] that is already conveyed is not retractable." The trial judge asked counsel several times if he desired a curative instruction and counsel adamantly stated that there was no way the impression could be displaced, and that such an instruction would not be curative. Out of an abundance of precaution, counsel requested the instruction, although maintaining his position that the judge should grant a mistrial. The judge denied the mistrial motion and instructed the jury as follows:

> [P]lease disregard any statement by the witness about his calling the Probation Officer. That has no bearing on the issues for trial in this case so please disregard that statement. Disabuse your mind thereof.

On appeal, Creech claims the trial judge goaded him into requesting the curative instruction. He claims he was entitled to a mistrial. We disagree.

The granting of a mistrial is a matter within the sound discretion of the trial judge, whose decision will not be disturbed on appeal absent an abuse of discretion amounting to an error of law. *State v. Washington,* — S.C. —, 432 S.E. (2d) 448 (1993). The power to grant a mistrial should be used with the greatest of caution under urgent circum-

stances, and for very plain and obvious cases. *State v. Prince,* 279 S.C. 30, 301 S.E. (2d) 471 (1983). The Supreme Court favors the exercise of wide discretion of the trial judge in determining the merits of a mistrial motion in each individual case. *State v. Howard,* 296 S.C. 481, 374 S.E. (2d) 284 (1988). Among the factors to be considered are the character of the testimony, the circumstances under which it was offered, the nature of the case, and the other testimony in the case. *Id.* Applying these factors to the case before us, we find no abuse of discretion in denying the motion.

In addition, we find the curative instruction in this case to be almost identical to the instruction the Supreme Court held to be sufficient in *State v. Howard.* In *Howard,* the State presented evidence indicating the defendant committed a separate homicide from the one for which he was on trial. The trial judge denied a mistrial motion but, at counsel's request, instructed the jury to disregard what the witness had said and admonished the jury that the statement "had nothing to do with this trial." The Supreme Court held the trial judge did not abuse his discretion in refusing to grant a mistrial and in the curative instruction given to the jury. Likewise, we find no abuse of discretion in this case.

## II.

Next, Creech claims the trial court erred in refusing his directed verdict motion. We disagree. Assault and battery of a high and aggravated nature is the unlawful act of violent injury to another person accompanied by circumstances of aggravation, such as the infliction of serious bodily injury or the resistance of lawful authority. *State v. Jones,* 133 S.C. 167, 130 S.E. 747 (1925). Resistance to lawful arrest by constituted authority accompanied by an unlawful act against a police officer becomes an assault and battery and may be of an aggravated nature though the officer suffers no actual bodily harm. *State v. Brown,* 269 S.C. 491, 238 S.E. (2d) 174 (1977).

In reviewing the refusal to grant a directed verdict, the evidence is viewed in the light most favorable to the State to determine whether there is any evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused, or from which guilt may be

fairly and logically deduced. *State v. Breech*, — S.C. —, 417 S.E. (2d) 873 (1992).[4] Viewed in this manner, the evidence in this case was sufficient to withstand the directed verdict motion. Officer Blackburn testified he saw Creech strike Officer Bell in the face. Officer Stone testified he witnessed Creech strike Officer Bell and attempt to get Officer Bell's service revolver. Officer Stone also testified that Creech broke free from his restraints and struck officer Stone in the eye. Officers David Bazzle and Gene Williams both testified they saw Creech struggling with Officer Bell and attempting to get Bell's gun. Officer Bell testified that Creech struck him on the face and, in the struggle that followed, Creech put his right hand on Bell's gun. This evidence is more than sufficient to send the case to the jury.

## III.

Finally, Creech argues the trial court erred in refusing his motion for a suppression hearing pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. (2d) 908 (1964). We agree.

Prior to testimony by Captain Gantt, Creech moved to suppress testimony regarding a statement he allegedly made to Gantt at the hospital that Creech tried to get Officer Bell's gun. Creech stated he made no statement at all, but maintained he was entitled to a *Jackson v. Denno* hearing because he was in custody, under arrest, and did not receive *Miranda*

---

[4] This is the correct standard of review on appeal of the denial of a directed verdict motion in a criminal case. Creech asks this Court to apply the "proof of guilt to the exclusion of any other reasonable hypothesis" test. The Supreme Court in *State v. Edwards*, 298 S.C. 272, 379 S.E. (2d) 888 (1989), noted that there was confusion in the case law over whether the latter standard was the proper standard for the trial court to use in ruling on directed verdict motions in circumstantial evidence cases. The Court stated the latter standard is the proper standard to be charged for use by the *jury* in its deliberations, and not the test to be used by the *judge* in deciding the directed verdict motion where the evidence is circumstantial. (Emphasis ours.) *Id.* The Supreme Court added:

> Our holding today clarifies the proper standard [for ruling on directed verdict motions in circumstantial evidence cases]. To the extent that *State v. Manis* [214 S.C. 99, 51 S.E. 2d 370 (1949)] and its progeny are inconsistent with our opinion today, these cases are overruled.

*Id.*, 379 S.E. (2d) at 889. One of those cases was *State v. Miller*, 287 S.C. 280, 337 S.E. (2d) 883 (1985), relied upon by Creech in his argument.

warnings. It is undisputed that Creech was not advised of his *Miranda* rights.

The judge denied the motion simply by finding a hearing unnecessary without further explanation. On appeal, the State contends the statement was admissible and that Creech was not entitled to a *Jackson v. Denno* hearing because no custodial interrogation occurred, and alternatively, any error in admitting the statement was harmless.

Whenever evidence is introduced that was allegedly ■ obtained by conduct violative of a defendant's constitutional rights, the defendant is entitled to have the trial judge conduct an evidentiary hearing outside of the presence of the jury at the threshold point to establish circumstances under which it was gained. *State v. Blassingame*, 271 S.C. 44, 244 S.E. (2d) 528 (1978). In *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. (2d) 908 (1964), the United States Supreme Court declared it axiomatic that a defendant in a criminal case is entitled to an independent evidentiary hearing to determine the voluntariness of statements made by the defendant prior to the submission of such statements to the jury. Thus, where there is conflicting evidence about a statement, the court must first make a finding as to the validity of the statement. *See State v. Silver*, 307 S.C. 326, 414 S.E. (2d) 813 (1992), *aff'd as modified*, — S.C. —, 431 S.E. (2d) 250 (1993); *State v. Childs*, 299 S.C. 471, 385 S.E. (2d) 839 (1989).

In making the determination, the trial judge should ex- ■ amine the totality of circumstances surrounding the utterance to determine whether the state has met its burden of proof so as to warrant admission of the confession. Part of the State's burden during this hearing is to prove that the statement was voluntary and taken in compliance with *Miranda*. *State v. Middleton*, 288 S.C. 21, 339 S.E. (2d) 692 (1986). The trial judge's resolution of the issue of voluntariness of a statement will not be disturbed on appeal absent an error of law. *State v. Atchison*, 268 S.C. 588, 235 S.E. (2d) 294 (1977).

Here, Creech challenged the use of the statement, and ■ conflicting evidence regarding the statement was before the court in that Creech denied ever making it. Under these circumstances, the trial court was required to first determine if the statement was, in fact, made. If he found

that the statement was made, he must then hold a *Jackson v. Denno* hearing to determine the voluntariness of the statement.[5] However, the trial court did not hold an independent hearing and made no findings as to the voluntariness of the statement or whether it was taken in compliance with *Miranda*.[6] Thus, Creech was erroneously deprived of an initial determination of the voluntariness of his statement before consideration by the jury as required by the Due Process Clause of the Fourteenth Amendment. *Jackson v. Denno, supra.*

Relying on *Silver*, the state contends that Creech had no absolute right to a *Denno* hearing because he was not subject to custodial interrogation. However, *Silver* is not analogous to the case now before us, and is not dispositive of the issue before us. In *Silver*, this court reasoned that since the defendant was not in custody and, thus, not entitled to *Miranda* warnings, there was no basis for a *Jackson v. Denno* hearing on the issue of voluntariness. *Silver*, 307 S.C. at 329, 414 S.E. (2d) at 815. However, as modified by our Supreme Court, *Silver* holds that a defendant need not show custody to be entitled to a *Denno* hearing on the voluntariness of a statement. Instead, custody is one factor which will be considered in determining voluntariness. 431 S.E. (2d) at 251.

Likewise, the contention that Creech's alleged utterance was unelicited does not dispense with the need of a reliable determination of the circumstances under which the statement was made. Cf. *State v. Howard,* 296 S.C. 481, 374 S.E. (2d) 284 (1988); *State v. Franklin,* 299 S.C. 133, 382 S.E. (2d) 911 (1989) (following suppression hearing, judge ruled statements admissible as spontaneous utterances). Here, the trial court held no hearing and made no specific finding indicating whether the alleged statement was simply spontaneous and unsolicited or the result of interrogation. We, therefore, find the statement was improperly admitted.

---

[5] Whenever a confession is offered by the government, the Fourth Circuit Court of Appeals' procedures require the court to determine the voluntariness of the confession in the absence of the jury regardless of whether the defendant objects to its admission. *Mullins v. U.S.,* 382 F. (2d) 258 (4th Cir. 1967).

[6] There is nothing in the record to indicate that the trial judge even attempted to make a determination of the factual issues arising out of the conflicting evidence.

The State further argues the admission of the state-
ment, even if violative of Creech's Fifth Amendment
rights, was nevertheless harmless beyond a reasonable
doubt. We disagree.

In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17
L.Ed. (2d) 705 (1967), the United States Supreme Court rec-
ognized that error of even constitutional magnitude may be
harmless if, considering the entire record on appeal, the re-
viewing court finds beyond a reasonable doubt that the error
did not contribute to the verdict. *See also Taylor v. State*, —
S.C. —, 439 S.E. (2d) 820 (1993) (for the error to be harmless,
we must determine "beyond a reasonable doubt the error
complained of did not contribute to the verdict obtained").
Here, Creech's alleged statement was not merely cumulative,
but probably influenced the jury's verdict in that must of the
testimony focused on Creech grabbing for Officer Bell's gun.
We cannot conclude beyond a reasonable doubt that the erro-
neous admission of this statement did not influence the jury's
verdict.

Furthermore, our Supreme Court has held the error in-
volved here harmless when the only reasonable inference to
be drawn from the evidence is that the statement was volun-
tarily given or the defendant concedes it voluntariness. *State
v. Victor*, 300 S.C. 220, 387 S.E. (2d) 248 (1989). Here, Creech
contested the voluntariness of the statement in maintaining
that no statement was made.

While Creech maintains that he is entitled to a new
trial, the State contends that the appropriate remedy
is to remand this case for a suppression hearing only.
Neither the Constitution nor the *Jackson v. Denno* decision
mandates a new trial, if, in a soundly conducted collateral pro-
ceeding, Creech's confession is determined to be voluntary.
*State v. Cannon*, 248 S.C. 506, 151 S.E. (2d) 752 (1966); *See
also State v. Primus*, — S.C. —, 440 S.E. (2d) 128 (1994) (since
determination of whether appellant was "in custody" presents
a factual issue, the case was remanded to circuit court for a
*Jackson v. Denno* hearing); *State v. Fortner*, 266 S.C. 223, 222
S.E. (2d) 508 (1976) (although appellant is entitled to a new
hearing on the issue of voluntariness, he is not necessarily en-
titled to a new trial); *But see State v. Victor*, 387 S.E. (2d) at
250 (remand for suppression hearing only inadequate remedy

where the *jury* never considered the issue of voluntariness).[7]

Accordingly, we remand this case to the Court of General Sessions for Barnwell County for a *Jackson v. Denno* hearing. Should it be determined upon such hearing that the statement should have been suppressed, it will, of course, follow as a matter of course that Creech is entitled to a new trial.

Remanded.

HOWELL, C.J., concurs.

GOOLSBY, J., concurs in part, and dissents in part.

GOOLSBY, Judge (concurring in part and dissenting in part):

I agree with the majority's decision that Creech was entitled to neither a mistrial nor to a directed verdict and therefore concur in Parts I and II of the majority's opinion. Unlike the majority, however, I would hold the trial court did not commit any error, certainly not any prejudicial error, in not conducting a suppression hearing.

The facts in this case bear strong resemblance to the facts found in *United States v. Peoples*, 748 F. (2d) 934 (4th Cir. 1984), *cert. denied*, 471 U.S. 1067, 105 S.Ct. 2143, 85 L.Ed. (2d) 500 (1985). There, a police officer walked into the room in which the defendant was being questioned by an FBI agent when the defendant apologized to the police officer for shooting at him. Despite the lack of a prior determination of voluntariness, the court upheld the admission of the police officer's testimony regarding the incriminating apology because the police officer was not interrogating the defendant when he made the statement. *Id.* at 937.

Here, Creech made a spontaneous and unsolicited statement while under arrest. Creech made his statement during a conversation with Officer Gantt regarding the hazards of police duty. When officer Gantt commented about how some police officers view a scuffle between themselves and a citizen as an attempt by the citizen to grab the police officer's gun, Creech stated he had attempted to grab the gun of the arresting officer, Bell. Then, Officer Gantt responded, "You ought not to say that," to which Creech allegedly replied, "Well, I tell it like it is."

---

[7] Although the jury never considered the issue of voluntariness in this case, the issue was not preserved for appellate review.

Although Creech was under arrest, interrogation is a "measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed. (2d) 297, 307 (1980). Based upon the colloquy between Officer Gantt and Creech, it is apparent Officer Gantt was not interrogating Creech because he was not deliberately eliciting information from Creech. *Peoples*, 748 F. (2d) at 936.

Moreover, the error, if any, was harmless because there was sufficient evidence to support Creech's conviction for aggravated assault and battery.

Assault and battery of a high and aggravated nature is the unlawful act of violent injury to another person accompanied by circumstances of aggravation, such as the infliction of serious bodily injury or the resistance to lawful authority. *State v. Brown*, 269 S.C. 491, 238 S.E. (2d) 174 (1977) (citations omitted). Further, an assault and battery may be of an aggravated nature even though the person resisting arrest uses no deadly weapon or the officer suffers no actual bodily harm. *Id.* at 496, 238 S.E. (2d) at 176 (citations omitted).

Besides Creech's statement, the State introduced the following testimony: (1) Officer Blackburn testified he saw Creech strike Officer Bell in the face; (2) Officer Stone testified he witnessed Creech strike Officer Bell and attempt to grab Officer Bell's service revolver and he saw Creech break free from his restraints and strike Officer Stone in the eye; (3) Officer David Bazzle testified he saw Creech struggle with Officer Bell and attempt to grab Officer Bell's revolver; (4) Gene Williams testified he saw Creech attempt to grab Officer Bell's revolver; and (5) Officer Bell testified Creech struck him on his face and, in the ensuing struggle, Creech put his right hand on Officer Bell's revolver.

Accordingly, I would affirm Creech's conviction and sentence.